## LEONARD E. MILES *vs.* CITY OF LYNN.

Essex. Nov. 5, 1880. — Feb. 25, 1881. ENDICOTT & FIELD, JJ., absent.

In an action against a city for personal injuries, occasioned by a defect in a high
way, evidence that, a few days after the injury, a police officer of the defend-
ant made a friendly call upon the plaintiff, who then informed him of the time,
place and cause of the injury, and said he intended to sue the city, is not suffi-
cient evidence of a notice under the St. of 1877, *c.* 134, although the plaintiff
testified he understood he was talking with the officer in an official character;
and evidence that a third person, who was present at the time of the conversa-
tion, understood it as intended as a notice to the city is immaterial.

A notice to a city that a person has been injured by a defect in a certain street
does not sufficiently designate the place or the cause of the injury, under the
St. of 1877, *c.* 234, § 3; and such notice is not aided by a statement made by
the injured person in a conversation with a police officer of the city, which is,
although sufficient in terms, not a good notice, because made in a casual con
versation.

TORT for personal injuries occasioned to the plaintiff by an
alleged defect in a sidewalk of one of the streets in the de-
fendant city. Answer, a general denial. Trial in the Superior
Court, before *Gardner*, J., who allowed a bill of exceptions, in
substance as follows :

The plaintiff testified that on Saturday, January 25, 1879, at
about nine o'clock in the evening, he fell on the sidewalk of
Monroe Street, in Lynn, opposite one Kelly's store, upon a ridge
of ice, or snow and ice, which extended across the entire side-
walk ; that he tripped on the ridge of ice, fell down, and broke
both the bones near the ankle joint. There was evidence tend-
ing to show that he was in the exercise of due care. On the
question of notice to the city the evidence was as follows :

The plaintiff testified : "On the Thursday next after the acci-
dent, John A. Thurston and Isaiah Stone, police officers, came
to see me when I was sick in bed." (Stone was a private watch-
man, appointed police officer by the city, but paid by individu-
als, and Thurston a captain of the night police.) " I then knew
what the law was, and that I could give notice to a police offi-
cer. They came in, asked how I did, how I got hurt. I told
them I fell front of Kelly's sidewalk on Monroe Street. I said
I was walking along front of Kelly's store. I stepped into a
hole in the ice on the sidewalk. I told him it was on Saturday

evening, January 25th. Thurston said, 'I suppose you know you have a remedy.' I said, 'Yes, I know it. I intend to sue the city.' I then intended to claim damages." On cross-examination, the plaintiff testified: "I learned after I was hurt that it was necessary to give notice; did not know it before. I knew it when the officers came there. I understood I was talking with the officers in an official character; they were there on a friendly call. I did n't say, in any form of words, I give you notice, or gave you that as a notice. I did n't tell them I wanted them to understand this as notice. I did n't say that I intended this as notice. It occurred to me to be a proper time to give notice. When Captain Thurston asked me, 'You know you have a redress?' then it occurred to me to be a proper time to give notice. When they came in, they first asked me how I was; then, how I got hurt. We first talked about the police force and the new appointments, and we had a casual conversation. I said nothing or did nothing to indicate any change from the previous conversation when we began to talk about the injury."

Isaiah H. Stone, called by the plaintiff, testified: "I am a police officer of Lynn. I have been for the last twelve years. I am appointed by the city, but am hired and paid by persons whose buildings I watch. Captain Thurston is not a special officer, but an active one, and is paid by the city. On Wednesday or Thursday after the accident I called on the plaintiff. We had been friends; he had been on the police force; Thurston was there; we had agreed the night before to call down. Stacy and I went together. Thurston came in after us. The plaintiff told Thurston about going through the street; that against Kelly's the ice was cut down, that he slipped, stubbed his toe on the ice, fell and was hurt. He said it was on the Saturday night before. Captain Thurston said it was a good chance to get something out of the city. The plaintiff said, 'Yes, if they did n't settle, it was his intention to sue the city.'" On cross-examination, he testified: "We went down on a friendly call, not official, had a friendly conversation, afterwards inquired about his health, had a casual conversation about the accident, this was all."

George Stacy, called by the plaintiff, testified: "I went with Stone to the plaintiff's. Captain Thurston came in afterwards.

We had a conversation. The plaintiff told Thurston how he was injured. After conversing, Thurston said something about getting satisfaction from the city. The plaintiff said he should, as soon as he got well enough or strong enough." On cross-examination, he testified, " It was a friendly call, general conversation, a general, friendly, casual conversation; by casual I mean usual conversation."

The plaintiff also put in a written notice, given to the mayor of the defendant city on February 17, 1879, which was signed by his counsel, and was as follows: " To Geo. P. Sanderson, Mayor of Lynn : In compliance with the provisions of the St. of 1877, c. 234, you are hereby notified that, on the evening of Saturday, the 25th day of January last, I met with an injury on Monroe Street by reason of a defect in the street, and that I shall claim damages of the city for the same. Feb. 17, 1879."

The plaintiff also offered to prove, by Isaiah Stone, that he understood the conversation, at the time of the interview between himself, Thurston and the plaintiff, to be intended as a notice to the city, and that the only reason why he did not report it to the mayor was that he supposed Captain Thurston, being a regular officer, would do so. The judge, upon the defendant's objection, excluded the evidence.

The defendant asked the judge to rule that the plaintiff had failed to show any legal notice, as is required by statute, to the defendant. The plaintiff contended that he was entitled to go to the jury upon the evidence.

The judge ruled that there was no sufficient evidence of notice to the city to entitle the plaintiff to go to the jury, and directed a verdict for the defendant. The plaintiff alleged exceptions.

*S. B. Ives, Jr.*, for the plaintiff.

*D. O. Allen*, for the defendant.

SOULE, J. The conversation between the plaintiff and the police officer was not a notice to the defendant within the meaning of the statute. It was had at the time of a friendly call by the officer and another friend on the plaintiff, and was an ordinary conversation, in which all that was said by the plaintiff was in reply to questions put to him by his caller. There was nothing in the language, nor in the circumstances under which it was used, to indicate that it was intended as a notice under

the statute. *Kenady* v. *Lawrence*, 128 Mass. 318. *McNulty* v. *Cambridge, ante,* 275.

The written notice to the mayor was given seasonably, but was insufficient. It stated neither the place nor the cause of the injury. To say that the injury was caused by a defect in the road or street gives no information. It does not indicate whether the accident resulted from a gas-pipe protruding from the pavement, a broken plank in the walk, absence of bricks, a hole caused by water flowing under the walk, nor from what other bad condition of the way it resulted. The statute is intended to secure to the city or town to which the notice is given such information as to the exact locality, and as to the nature of the alleged defect, that it will be able to judge for itself whether any cause of action really exists, and to repair the defect, if a real one, before further injury results from it. So far as regards the statement of place, in the notice, the case comes within *Larkin* v. *Boston,* 128 Mass. 521, and *Donnelly* v. *Fall River, ante,* 115.

The written notice is not aided by the greater fulness of statement in the conversation with the officer. There is no such relation between the two that one can be invoked to aid the deficiencies of the other. The circumstances are quite unlike those in *Harris* v. *Newbury,* 128 Mass. 321, where the conversation of the son of the injured man with one of the selectmen whom he took to the place of the accident, and told all about it, together with a written letter calling for compensation, but not stating the cause of the injury, were held to be sufficient notice under the statute.

The offer to prove by Stone, who was present at the conversation between the police officer and the plaintiff, and had some part in the conversation, that he understood the conversation to be intended as a notice to the city, was properly rejected. His opinion was not competent. The only evidence admissible was evidence of what was said and done, and of the circumstances attending the interview.　　　　　　　　　*Exceptions overruled.*